IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.  05-0358M (DAR) |
| | : | |
| GERARD W. KILEY, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE DUE TO CHARGES UNCONSTITUTIONALITY AND THE
FREEDOM OF SPEECH PROTECTIONS
AFFORDED DEFENDANT**

The United States of America, for the reasons set forth below, opposes Defendant's Motion to Dismiss Case Due to Charges Unconstitutionality and the Freedom of Speech Protections Afforded Defendant ("Defendant's Motion to Dismiss") and urges that Defendant's Motion to Dismiss be, in all things, denied.

**THE ALLEGATIONS OF DEFENDANT'S MOTION TO DISMISS**

*Defendant's Judicial Admissions of Fact*

Through the voluntary judicial admissions in his Motion to Dismiss, defendant Kiley claims he has "been actively involved with various Vietnam Veterans, organizations and groups, attended the various memorial services, functions, protests that occurred over the years from 1974 to the present."  [Id., at 1, ¶ I]   Further, defendant Kiley judicially "concedes:"

> [T]hat on June 21, 2005, Phan Khai was the Prime Minister of the Socialist Republic of Vietnam and that he was an official guest of the United States Government during most of his time in the United States on that day, June 21, 2005.  Also, the defendant did enter the banquet room at which the Prime Minister, United States Senators John McCain, John Kerry and other dignitaries were in attendance.  Furthermore, the defendant did not have a ticket for admission as an attendee and appears to have "crashed the party."  Just as United States Senator John McCain had introduced Prime Minister Khai and as Mr. Khai

was mounting the podium Mr. Kiley allegedly approached the area and threw a clear liquid from his hand held glass in the direction of Mr. Khai. Mr. Kiley "shouted" words to the effect, "You are [a] sham ... you kill your own people."
* * * *

　　* * * * [A]s he [Mr. Kiley] made his way toward the center podium[,] Mr. Kiley had carried a glass of wine in his hand, and then did stop in front of the head table, at which Prime Minister Khai, Senators McCain and John Kerry sat. Mr. Kiley did toss the contents of the glass of wine in the direction of the main table....

　　　　*　　　　*　　　　*　　　　*

　　Following [his] remarks directed at Mr. Khai the defendant shouted to Senator McCain, "You are a traitor."

[Motion to Dismiss, pages 2-3]

### *The Theories For Dismissal In Defendant's Motion*

In his Motion to Dismiss,[1] defendant Kiley claims that the Government's two-count Information should be dismissed because 18 U.S.C. §§ 112(b)(1) & (2) are "unconstitutional as relates to the defendant here as well as pursuant to his freedom of speech protections afforded the accused." [Motion, page 1, preamble] Apparently attempting to illuminate the basis for the remedy he seeks, defendant Kiley says variously: (1) "The simple issue here is whether the defendant had a right to express himself as he did publicly to a foreign official who was in the United States as an official guest of the United States Government at the time the words and acts occurred" [Motion, page 2, 1st unnumbered ¶]; (2) "[N]o reasonable person could interpret

---

[1] In its Opposition, the Government notes, but does not dwell upon, the numerous erroneous citations in Defendant's Motion. For instance, Defendant's Motion cites United States v. Marcano-Garcia, 622 F.2d 12 (1st Cir. 1980), for the proposition that "terms such as 'assaults' and 'offers violence' as used in 18 U.S.C. § 112 are unconstitutionally vague and overbroad." [Motion, page 3] In fact, in *Marcano-Garcia*, the First Circuit held precisely the opposite: the statutory terms were *neither* unconstitutionally vague *nor* were they overbroad. 622 F.2d at 15-16.

[defendant Kiley's actions] as a form of threat, harassment, assault or intimidation" [id., at 2, 3rd unnumbered ¶; *accord* id. at 3, 1st unnumbered ¶ ("Mr. Kiley never uttered a word that could reasonably be construed as a threat, nor did he appear to even be noticed by Mr. Phan Khai, hence, as a matter of law there could be no harassment or interference with the Prime Minister's duties")]; (3) "Simply put, Mr. Kiley exercised properly his First Amendment Right to Freedom of Speech and Assembly .... [therefore] the charging document here is flawed and should be dismissed as an unconstitutional infringement on Kiley's First Amendment Rights" [id., at 4, 1st unnumbered ¶]; and (4) "The information should be dismissed due to its infringement of Mr. Kiley's First Amendment Rights and its inapplicability to the facts and circumstances of this case." [Id., at 5-6]

Hence, although neither perfectly clear nor well-illuminated, Defendant's Motion appears to claim the pending Information should be dismissed for either or both of two reasons: *First*, the facts, as defendant Kiley illustrates them, cannot sustain a conviction under the text and reach of 18 U.S.C. Section 112(b)(1) or (2). *Second*, because Section 112(b), as applied to defendant Kiley's proffered conduct, constitutes an impermissible infringement on defendant Kiley's Constitutionally-guaranteed freedoms of speech and expression.

As set forth below, Defendant's Motion should be denied because it is procedurally premature, it is an impermissible attempt to challenge pre-trial the adequacy of the Government's evidence against the defendant, and it is both legally and factually without merit.

## DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE IT IS PREMATURE AND IS BOTH SUBSTANTIVELY AND LEGALLY WITHOUT MERIT

### Defendant's Motion Is An Impermissible Attempt to Test the Adequacy of the Government's Evidence Prior To Trial and Must Therefore Be Denied

It has long, and generally, been accepted that a "defendant my not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." See United States v. Mann, 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied,* 423 U.S. 1087 (1976); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curium); United States v. Zwick, 199 F.3d 672 (3d Cir. 1999); *and cf.*, United States v. Yakou, 393 F.3d 231, 237-38 (D.C. Cir. 2005) (permitting pre-trial dismissal in the limited circumstance where both (a) the dismissal is based on a question of law, *and* (b) the Government fails to make a timely objection).[2] To be sure, Federal Rule of Criminal Procedure 12(b) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges.[3] See United States v. Sampson, 371 U.S. 75, 78-79 (1962); United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000). Thus, a motion to dismiss the indictment "cannot be used as a device for

---

[2] As is clear from the Government's Opposition herein, as dismissal would be improper in this case because: (a) defendant's Motion is based on issues of fact (*i.e.*, whether the Government can marshal sufficient evidence at trial) rather than pure issues of law; and (b) the Government has objected. As a review of the *Yakou* opinion makes clear, either of these reasons is independently sufficient to require a denial of Defendant's Motion to Dismiss. See *Yakou*, 393 F.3d at 237-38.

[3] When evaluating a Fed. R. Crim. Pro. 12(b) Motion to Dismiss, the Court must presume the truth of the allegations in the charging instrument. *See, e.g.*, United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

summary trial of the evidence.... The Court should not consider evidence not appearing on the face of the indictment."[4]  United States v. Marra, 481 F.2d 1196, 1199-1200 (6th Cir.), *cert. denied*, 414 U.S. 1004 (1973); *accord* United States v. Salman, 378 F.3d 1266, 1267-68 (11th Cir. 2004); United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996); *and see* United States v. Knox, 396 U.S. 77, 83 n.7 (1969) (unless there is a stipulated record or unless immunity issues are implicated, a pretrial motion to dismiss an indictment may not be used to test the sufficiency of the Government's evidence).  The Government has no duty to reveal all of its proof before trial. *See* United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995), *appeal after remand sub nom*, 145 F.3d 662 (8th Cir.), *cert. denied*, 525 U.S. 1032 (1998).

Hence, as established above, a defendant may not challenge pre-trial the adequacy of the Government's evidence, other than to test the sufficiency of the allegations contained within the four-corners of the charging instrument.  Because defendant Kiley's Motion to Dismiss patently seeks to move beyond the allegations contained in the Government's Information and to test impermissibly the adequacy the Government's evidence prior to trial, his Motion must be denied.

Moreover, to the extent defendant Kiley's Motion could be interpreted to seek a Fed. R. Crim. Pro.12(b) dismissal of the Information on the basis that the allegations of the charging instrument do not suffice to charge an offense, *see* United States v. Sampson, 371 U.S. at 78-79; United States v. DeLaurentis, 230 F.3d at 661, as set forth below, such a contention is without merit, as well.

---

[4] There is no corollary to Federal Rule of Civil Procedure 56 (Motion for Summary Judgment) in the criminal context.  *See, e.g.,* United States v. Yakou, 393 F.3d 231, 237 (D.C. Cir. 2005); United States v. Salman, 378 F.3d 1266, 1267-68 (11th Cir. 2004); United States v. DeLaurentis, 230 F.3d 659, 661 (3d Cir. 2000).

## **A Rule 12(b) Motion Is Similarly Without Merit And Must Be Denied**

As indicated above, Federal Rule of Criminal Procedure 12(b) permits a defendant to seek a pre-trial dismissal of the charging instrument in instances where the allegations of the charging instrument do not suffice to charge an offense. *See* United States v. Sampson, 371 U.S. at 78-79; United States v. DeLaurentis, 230 F.3d at 661. However, Rule 12(b) cannot avail defendant Kiley, because as established below, the Government's Information in this case plainly alleges sufficient facts to support the offenses with which defendant Kiley is charged.

*Allegations of the Government's Information*

In this case, the Government's Information alleges:

Count One

On or about June 21, 2005, within the District of Columbia, defendant **GERARD W. KILEY** willfully intimidated, coerced, threatened, and harassed Phan Van Khai, Prime Minister of the Socialist Republic of Vietnam, a foreign official and an official guest of the United States, and obstructed Prime Minister Phan Van Khai in the performance of the Prime Minister's duties.
   (**Intimidation of a Foreign Official**, in violation of Title 18 U.S. Code,
    Section 112(b)(1))

Count Two

On or about June 21, 2005, within the District of Columbia, defendant **GERARD W. KILEY** willfully attempted to intimidate, coerce, threaten, and harass Phan Van Khai, Prime Minister of the Socialist Republic of Vietnam, a foreign official and an official guest of the United States, and attempted to obstruct Prime Minister Phan Van Khai in the performance of the Prime Minister's duties.
   (**Attempted Intimidation of a Foreign Official**, in violation of Title 18 U.S.
    Code, Section 112(b)(2))

[Information, pages 1& 2]

### *The Elements of 18 U.S.C. § 112(b)*

By its terms, 18 U.S.C. Section 112(b) provides, *inter alia*:

> Whoever willfully –
>
> (1) intimidates, coerces, threatens, or harasses a foreign official or an official guest or obstructs a foreign official in the performance of his duties; [or]
>
> (2) attempts to intimidate, coerce, threaten, or harass a foreign official or an official guest or obstructs a foreign official in the performance of his duties;
>
>   *   *   *   *
>
> shall be fined under this title or imprisoned not more than six months, or both.

[Id.]

As is readily apparent, the allegations of the Government's Information make out a sufficient basis for the prosecution and conviction of defendant Kiley as to each of the two offenses under 18 U.S.C. § 112(b) with which defendant Kiley stands charged.[5] Because Government's Information alleges sufficient facts which, if proven at trial, would sustain defendant Kiley's convictions for the crimes charged, Defendant's Motion to Dismiss is without merit and must be denied. See United States v. Sampson, 371 U.S. at 78-79 (1962); United States v. Salman, 378 F.3d at 1267-68; United States v. DeLaurentis, 230 F.3d at 661; United States v. Jensen, 93 F.3d at 669; United States v. Marra, 481 F.2d at 1199-1200; *and see* United States v. Knox, 396 U.S. at 83 n.7.

---

[5] As indicated *supra*, at this pre-trial stage of these proceedings, the allegations of the Government's charging instrument must be accepted by the Court as being true. See United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996).

For this reason, as well, Defendant's Motion to Dismiss is without merit and should be denied.

### Defendant's Motion Is Factually and Legally Without Merit

Although, for the reasons set forth above, the Government continues its strenuous objection to the Court entertaining pre-trial the contentions of Defendant's Motion that seek to challenge the factual allegations of the Information herein, out of an abundance of caution, the Government urges that *the judicial admissions of the defendant in his Motion* are sufficient to sustain defendant's convictions on the charges in the Information. To be sure, the Government does not adopt as the entirety of its intended proof at trial any and/or all of the judicial admissions of defendant Kiley's Motion.[6] However, as can be seen below, the judicial admissions of defendant Kiley are sufficient to sustain his convictions at trial as to the crimes with which he stands charged.

*Judicial Admissions of Defendant Kiley*

As indicated above, in his Motion to Dismiss, defendant Kiley makes various judicial admissions, including, but not limited to, his claims that he has "been actively involved with various Vietnam Veterans, organizations and groups, attended the various memorial services, functions, protests that occurred over the years from 1974 to the present." [Id., at 1, ¶ I] Further, defendant Kiley judicially "concedes:"

> [T]hat on June 21, 2005, Phan Khai was the Prime Minister of the Socialist Republic of Vietnam and that he was an official guest of the United States

---

[6] To be sure, the Government intends to introduce at trial substantial other and further evidence. Nor should the Government's examination herein of the judicial admissions of the defendant be, in anyway, deemed an adoption of any of defendant's admissions as being full, complete, and/or unvarnished.

> Government during most of his time in the United States on that day, June 21, 2005.  Also, the defendant did enter the banquet room at which the Prime Minister, United States Senators John McCain, John Kerry and other dignitaries were in attendance.  Furthermore, the defendant did not have a ticket for admission as an attendee and appears to have "crashed the party."  Just as United States Senator John McCain had introduced Prime Minister Khai and as Mr. Khai was mounting the podium Mr. Kiley allegedly approached the area and threw a clear liquid from his hand held glass in the direction of Mr. Khai.  Mr. Kiley "shouted" words to the effect, "You are [a] sham ... you kill your own people."
> * * * *
>
> * * * * [A]s he [Mr. Kiley] made his way toward the center podium[,] Mr. Kiley had carried a glass of wine in his hand, and then did stop in front of the head table, at which Prime Minister Khai, Senators McCain and John Kerry sat.  Mr. Kiley did toss the contents of the glass of wine in the direction of the main table....
>
> *       *       *       *
>
> Following [his] remarks directed at Mr. Khai the defendant shouted to Senator McCain, "You are a traitor."

[Motion to Dismiss, pages 2-3]

Hence, by direct application, defendant Kiley has judicially admitted that he: (1) wilfully and intentionally, (2) attempted to and/or succeeded in, (3) intimidating, coercing, threatening, and/or harassing, (4) a foreign official and an official guest, and (5) obstructed a foreign official in the performance of his duties.

As a result, unless the statutory provisions with which defendant Kiley is charged are deemed unconstitutional, by his own binding admissions, defendant Kiley is guilty of the crimes with which he is charged.

### *Section 112(b) is Constitutional*

The citations in Defendant's Motion to cases involving restrictions on the use of "public places for expressive activity," see Motion, pages 4-6, and "peaceful demonstrations" at public

places "near foreign missions," *id.*, are unavailing. This is so, because here, as established above, defendant Kiley judicially admits he intentionally trespassed ("crashed the party") at a private-ticketed event set on private property (the Grand Ballroom at the Mayflower Hotel.) Further, after pirating the seat and dinner of another, he admits he wilfully- timed his intended disruption for maximum effect, and that, to that end, as the Prime Minister was about to begin his speech to the gathering, defendant Kiley rose from the audience, approached Prime Minister Khai, threw wine and/or water in the direction of Prime Minister Khai, and "shouted" at the Prime Minister words to the effect, "You are [a] sham ... you kill your own people," *see* Motion, pages 2-3, before turning to Senator McCain and "shouting," "You are a traitor." See id.

In Boos v. Barry, 485 U.S. 312 (1988), the Supreme Court struck down a District of Columbia law (22 D.C. Code § 1115) that was materially more restrictive than 18 U.S.C. § 112. In so doing, the Supreme Court compared the District of Columbia law to Section 112, and found:

> The two statutes, however, are not identical, and the differences between them are constitutionally significant. In two obvious ways, § 112 is considerably less restrictive than the display clause of § 22-1115. First and foremost, § 112 is not narrowly directed at the content of speech but at any activity, including speech, that has the prohibited effects. Moreover, § 112, unlike § 22-1115, does not prohibit picketing; it only prohibits activity undertaken to "intimidate, coerce, threaten, or harass."

485 U.S. at 1165. Hence, by strong implication, the Supreme Court in *Boos* embraced the terms and reach of Section 112 as being constitutionally permissible. In so doing, the Supreme Court poignantly observed:

> [I]t is over course correct that the United States has a vital national interest in complying with international law. * * * * Moreover, protecting foreign emissaries have a long history and noble purpose. In this country national concern for the

> protection of ambassadors and foreign ministers even predates the Constitution. In 1781 the Continental Congress adopted a resolution calling on the States to enact laws punishing "infractions of the immunities of ambassadors and other public ministers, authorized and received as such by the United States....
>
> The need to protect diplomats is grounded in our Nation's important interest in international relations. As a leading commentator observed in 1758, "[i]t is necessary that nations should treat and hold intercourse together, in order to promote their interests, – to avoid injuring each other, – and to adjust and terminate their disputes." E. Vattel, The Law of Nations 452 (J. Chitty ed. 1844) (translation). This observation is even more true today given the global nature of the economy and the extent to which actions in other parts of the world affect our own national security. Diplomatic personnel are essential to conduct of the international affairs so crucial to the well-being of this Nation. In addition, in light of the concept of reciprocity that governs much international law in this area, *see* C. Wilson, Diplomatic Privileges and Immunities 32 (1967), we have a more parochial reason to protect foreign diplomats in this country. Doing so ensure that similar protections will be accorded those that we send abroad to represent the United States, and thus serves our national interest in protecting our ambassadors and other diplomatic officials. These underlying purposes combine to make our national interest in protecting diplomatic personnel powerful indeed.

485 U.S. at 323-24; *and cf* Concerned Jewish Youth v. McGuire, 621 F.2d 471, 474-75 (2d Cir. 1980), *cert. denied*, 450 U.S. 913 (1981) (upholding in face of constitutional challenges New York City Police Department restriction of members of Jewish organization which sought to conduct demonstrations in front of Russian Mission to only 12 persons inside a "bull pen" without a sound device).[7]

More directly, Section 112(b) was expressly upheld in the face of broad constitutional challenges in CISPES v. FBI, 770 F.2d 468 (5th Cir. 1985). In *CISPES*, various members of the Committee in Solidarity with the People of El Salvador (CISPES) went to the Honduran Consulate in New Orleans, Louisiana, to protest alleged activities of the Honduran government in

---

[7] Curiously, although Defendant's Motion offers repeated citations to the District Court's decision in *Concerned Jewish Youth*, *see* Motion, pages 4-5, it omits any reference to the Second Circuit opinion in that case on appeal.

-11-

El Salvador. *Id*. at 470. When the CISPES members arrived on July 22, 1982 at the Honduran consulate, they asked to speak with the Consul. The Consul agreed to speak to them, and the Consul met with the CISPES members inside the Consulate. One of the CISPES members read a prepared statement. Several other members began peppering the Consul with questions concerning the actions of the Honduran government. *Id.* At the same time, another CISPES member began taking pictures of the entire Consulate and everyone inside. After the Consul agreed to deliver a copy of the CISPES statement to his government, the CISPES members left the Consulate and began picketing activities in front of the main entrance to the building housing the Consulate. *Id.* Shortly thereafter, an FBI agent approached the protesters and told them they were violating 18 U.S.C. § 112 by virtue of their activities, and directed the protesters to move their protest across the street. *Id*. at 470-71. Although the CISPES members initially complied with the agent's request and moved across the street, they soon returned and were again informed of the applicability of Section 112 to their activities. *Id*. at 471. Eventually, the CISPES members disbanded. *Id*. On September 29, 1982, the CISPES members filed a complaint seeking a temporary restraining order and a permanent injunction against the enforcement of 18 U.S.C. § 112(b) and a declaratory judgment as to the statute's constitutionality. *Id*. On July 29, 1984 the District Court resolved the parties' cross-motions for summary judgment, ruling *inter alia* that the statute was constitutional. *Id.* On appeal, the CISPES members continued to press their constitutional challenges to the facial validity of the statute and to its constitutionality as applied. *Id.* at 471-72.

On appeal, the Fifth Circuit carefully examined and rejected each of the constitutional challenges to Section 112. In so doing, it specifically found that Section 112(b)(1) and (b)(2)

were neither void for vagueness nor void for overbreadth. *Id*. at 472-77. Similarly, the Court of Appeals rejected entirely the members' First Amendment claims:

> To the extent the challenged provision,[8] as construed, operates to restrict any First Amendment rights, it is easily sustainable as a reasonable time, place, and manner restriction. Such restrictions are permissible, so long as they are content-neutral, serve a significant governmental interest, and leave open ample alternative channels of communications. *See, e.g., United States v. Grace*, 461 U.S. 171, 177 (1983).

770 F.2d at 477-78. In so doing, the Fifth Circuit held "the statute achieves a nice, and permissible, balance between freedom of expression and the important governmental interests which exist here." *Id.* at 478.

For the reasons set forth above, the same considerations obtain here. As a result, 18 U.S.C. § 112(b) is constitutional both on its face and as applied to defendant Kiley.

Because Section 112(b) is constitutional, and because defendant Kiley's judicially admitted conduct was violative of Section 112(b), his Motion must be denied for these reasons, as well.

## CONCLUSION

WHEREFORE, for each of the independent reasons set forth above, the Government urges the Court to deny, in all things, Defendant's Motion to Dismiss Case Due To Charges Unconstitutionality and the Freedom of Speech Protections Afforded Defendant.

---

[8] The challenged provision was Section 112(b)(3), which prohibited congregation of two or more persons within 100 feet of any protected building with intent to violate any provision of the statute.

        Respectfully submitted,

        KENNETH L. WEINSTEIN  
        United States Attorney  
        D.C. Bar No. 451058

By:   _____  
        BRUCE R. HEGYI  
        Assistant United States Attorney  
        D.C. Bar No. 422741  
        Transnational/Major Crimes Section  
        555 4th Street, N.W., 11-860  
        Washington, D.C.  20530  
        (202) 305-9637  
        (202) 307-6059 (fax)  
        www.bruce.hegyi@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CASE DUE TO CHARGES UNCONSTITUTIONALITY AND THE FREEDOM OF SPEECH PROTECTIONS AFFORDED DEFENDANT was served this ___ day of August, 2005 by fax and by First Class Mail, postage pre-paid, on defendant's counsel of record:

    KENNETH M. ROBINSON, ESQUIRE
    717 D STREET, N.W.
    FOURTH FLOOR
    WASHINGTON, D.C.  20004
    (202) 347-0081 (fax)

    _____
    Bruce R. Hegyi